**Stephen R. GLASSROTH, Plaintiff,**

v.

**Roy S. MOORE, Chief Justice of the Alabama Supreme Court, Defendant.**

**Melinda Maddox and Beverly Howard, Plaintiffs,**

v.

**Roy Moore, in his official capacity, Defendant.**

**Nos. CIV.A.01–T–1268–N, CIV.A.01–T–1269–N.**

United States District Court, M.D. Alabama, Northern Division.

Aug. 18, 2003.

---

J. Richard Cohen, Morris S. Dees, Jr., Rhonda Brownstein, Danielle Jeannine Lipow, Montgomery, AL, James A. Tucker, Tuscaloosa, AL, for plaintiff.

William Z. Messer, Robert J. Varley, Robert M. Weinberg, Varley & Messer, LLP, Montgomery, AL, Ayesha Khan, Washington, DC, for plaintiff/consolidated plaintiff.

Herbert W. Titus, Troy A. Titus, PC, Virginia Beach, VA, D. Stephen Melchior, Cheyenne, WY, Phillip Jauregui, Philllip L. Jauregui, LLC, Birmingham, AL, Rich Hobson, Pro Se, Roy S. Moore, Pro Se, Alabama Supreme Court Chief Justice, Montgomery, AL, for defendant.

John J. Park, Jr., Charles B. Campbell, Office of the Attorney General, Montgomery, AL, for consolidated defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

This litigation is again before the court, this time on a motion to stay, etc., filed on August 15, 2003, by defendant Roy S. Moore, Chief Justice of the Alabama Supreme Court. The Chief Justice asks that the court stay its August 5 final judgment and injunction pending the outcome of a petition for writ of mandamus and prohibition he has filed in the United States Supreme Court. The stay motion will be denied for the following reasons:

(1) In his petition for writ of mandamus and prohibition, the Chief Justice attacks, for several reasons, the August 5 final judgment and injunction, which required that he remove his Ten Commandments monument from the rotunda of the Alabama Judicial Building. *Glassroth v. Moore,* 275 F.Supp.2d 1347, 1348, 2003 WL 21892927 *1 (M.D.Ala.2003). As a required predicate to the issuance of the writ, the Chief Justice argues to the Unit-

**1274**

ed States Supreme Court that the relief sought "is not available in any other court." Defendant's motion to stay, etc., filed August 15, 2003 (Doc. no. 246) (attachment: petition for writ of mandamus and prohibition, at 2). *Mallard v. U.S. District Court for the Southern District of Iowa,* 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989) ("to ensure mandamus remains an extraordinary remedy, petitioners must show that they lack alternative means to obtain the relief they seek"); *Kerr v. U.S. District Court,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) ("the party seeking issuance of a writ [must] have no other adequate means to attain the relief he desires"). This is not true. The Chief Justice could have appealed, and still can appeal, the August 5 final judgment and injunction to the Eleventh Circuit Court of Appeals. 28 U.S.C.A. §§ 1291, 1292 (1994 & Supp. 2003). The Chief Justice should not be able to circumvent, or avoid, the Eleventh Circuit and keep that appellate court out of the orderly appellate process.

In short, with his writ petition, the Chief Justice is seeking relief in the wrong court at this time. *Bankers Life & Cas. Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (declining to issue a writ of mandamus because "extraordinary writs may not be used as substitutes for appeals, even though hardship may result from delay ... and whatever may be done without the writ may not be done with it") (internal citations omitted).

(2) As jurisdictional support for his writ petition, the Chief Justice invokes 28 U.S.C.A. § 1651(a), which provides that, "The Supreme Court and all courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Chief Justice argues that granting the writ will "aid [the Supreme] Court to conduct

an orderly and timely review of [his] petition for writ of certiorari." Defendant's motion to stay, etc., filed August 15, 2003 (Doc. no. 246) (attachment: petition for writ of mandamus and prohibition, at 1).

This argument is completely meritless. Aside from the fact, as stated above, that the Chief Justice can simply seek relief in the Eleventh Circuit from this court's August 5 final judgment and injunction, this court, not once but twice, essentially invited the Chief Justice to invoke the orderly and established process under the federal rules for a stay of an injunction pending a petition to the United States Supreme Court for writ of certiorari—invitations which the Chief Justice declined.

Therefore, the fact that the court issued a final judgment and injunction on August 5, without allowing for a stay pending review by the United States Supreme Court, is the direct, willed result of the actions of the Chief Justice himself. As the court explained in its August 5 final judgment and injunction, on two separate occasions this court conducted conference calls with counsel for all parties to discuss how to proceed regarding an injunction for removal of the monument once the appellate mandate had issued pursuant to the decision of the Eleventh Circuit Court of Appeals upholding the removal of the monument. *Glassroth v. Moore,* 335 F.3d 1282 (11th Cir.2003). During the first call, on July 28, before the appellate mandate had issued, the Chief Justice's counsel indicated that while they were aware of the proper procedure, under Rule 41 of the Federal Rules of Appellate Procedure, for requesting a stay of the mandate pending a request for review by the United States Supreme Court (and thus a continuance of the stay this court had previously entered pending Eleventh Circuit review of the initial injunction requiring removal of the monument, *Glassroth v. Moore,* 242 F.Supp.2d 1068 (M.D.Ala.2002)), they de-

clined to do so. *Glassroth v. Moore*, 275 F.Supp.2d 1347, 1348, 2003 WL 21892927 *1 (M.D.Ala.2003). During the August 4 conference call, after the mandate had issued, the Chief Justice's counsel again declined to use this opportunity to ask that a stay be entered or continued pending application to the Supreme Court for review. *Id.* at 1348. Indeed, in the final judgment and injunction, the court stated that one of the reasons for not continuing the stay already in effect was "because the Chief Justice did not ask, either in the Eleventh Circuit or in this court, for a stay of the injunction pending application for a writ of certiorari in the Supreme Court." *Id.* at 1349.

To this day, the court does not know any litigation-related reason why the Chief Justice declined to seek a stay through the orderly and established process outlined in the Federal Rules of Appellate Procedure. It can therefore be reasonably argued that the Chief Justice himself, for seemingly "extra-judicial" reasons known only to him, intentionally created the scenario from which he now contends in his petition for writ of mandamus and prohibition he should be extricated—apparently because there is now an effort afoot to remove him from office and because other state officials have now made known that they will enforce the August 5 final judgment and injunction if he does not. The court will not be a party to any extra-judicial machinations of the Chief Justice.[1]

(3) In his writ petition, the Chief Justice complains that the court improperly discussed in its August 5 final judgment and injunction the relief it might impose should the Chief Justice disobey the August 5 final judgment and injunction. The court

did this out of concern that the parties and the public in general needed to know that, if at all possible, this litigation would not devolve into some public clash between federal and state officials that could endanger public safety. That is, if the Chief Justice disobeyed the final judgment and injunction, there would be no opportunity for a "Stand in the Courthouse Door" and the public disruption that could attend it. Thus, the court concluded its relief discussion with the observation that the court "does not envision a scenario in which there would be an opportunity for any physical confrontation between federal and state officials or between federal officials and anyone else." *Glassroth v. Moore*, 275 F.Supp.2d 1347, 1349, 2003 WL 21892927 at *2 (M.D.Ala.2003). Instead, the court emphasized that it would initially employ non-confrontational means: "If called upon, this court intends, at this time, to achieve compliance by first exhausting the traditional civil-contempt process of levying fines." *Id.*

The court, therefore, made these observations in the interest of public safety and welfare, a concern which was warranted when made and remains warranted today—especially if, as is alleged in an attachment to the August 15 stay motion, evidence should reveal that the Chief Justice has now announced that he will not obey the August 5 final judgment and injunction. Defendant's motion to stay, etc., filed August 15, 2003 (Doc. no. 246) (attachment: complaint before the Judiciary Inquiry Commission, at 2, quoting the Chief Justice as stating "I have no intention of removing the monument of the Ten Commandments").[2]

---

1. It is important to note that the stay motion that is now before the court asks for a stay pending resolution of the *petition for writ of mandamus and prohibition;* consistent with the position the Chief Justice took during the July 28 and August 4 conference calls, he has

not asked for a stay pending any filing of a *petition for writ of certiorari.*

2. In fact, it can be reasonably inferred from the Chief Justice's filings that he may actually want a direct confrontation between federal officials and himself personally.

(4) In his writ petition, the Chief Justice complains that the court improperly served copies of the final judgment and injunction on various state officials who were not parties to the litigation. The Chief Justice argues that this act showed a disrespect for the sovereignty of the State of Alabama and its officials, in violation of the Eleventh Amendment to the United States Constitution. To the contrary, the court did this out of a profound respect for the State of Alabama and its law-abiding public officials. This respect is based on the belief that, should the Chief Justice disobey the final judgment and injunction, other responsible state officials will "assure that the State of Alabama is 'a government of laws and not of men,' as our Constitution requires" and will "follow the United States Supreme Court, as the Federal Constitution requires." Defendant's motion to stay, etc., filed August 15, 2003 (Doc. no. 246) (attachment: August 14 statement by Senior Associate Justice J. Gorman Houston, Jr.).

Under this scenario, regardless as to whether the Chief Justice obeys or disobeys the final judgment and injunction, there will be no need, in the true spirit of federalism, for further federal court interference in state affairs. Thus, it was quite appropriate and respectful that all responsible state officials be personally informed of the unfolding events in this litigation.

■ (5) Finally, for a district court to stay an injunction pending appellate review, the *following factors must be considered:* "(1) the applicant's likelihood of prevailing on the merits of the appeal; (2) whether the applicant will suffer irreparable damage absent a stay; (3) the harm that the other parties will suffer if a stay is granted; and (4) where the public interest lies." *Glassroth v. Moore,* 242 F.Supp.2d 1068, 1069 (M.D.Ala.2002). For the above reasons, none of these factors is satisfied.

The Chief Justice's motion to stay will therefore be denied. However, the court concludes with the observation that this denial in no way limits the Chief Justice's right to seek review by the United States Supreme Court, which he is still free to do. But, because he has consciously chosen not to ask the Eleventh Circuit Court of Appeals to keep the stay in place while he seeks such review, the law requires that the monument now be removed, with the understanding that it may be returned in the event the Supreme Court should agree with the Chief Justice.

Accordingly, it ORDERED that the motion to stay, etc., filed by defendant Roy S. Moore on August 15, 2003 (Doc. No. 246), is denied.