[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 12-12244
Non-Argument Calendar

————————————————

D.C. Docket No. 1:11-cv-00228-ODE


STEPHEN MICHAEL BOWERS, SR.

Plaintiff-Appellant,

Versus

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF
GEORGIA,
DR. ERROLL DAVIS, Chancellor, in his
Official capacity, et. al.

Defendants-Appellees.


————————————————

Appeal from the United States District Court
For the Northern District of Georgia

————————————————

(February 15, 2013)

Before CARNES, BARKETT, and EDMONDSON, Circuit Judges.

PER CURIAM:

Stephen Bowers, a white male lawyer proceeding pro se,[1] appeals the dismissal of his civil rights complaint. He alleged denial of his substantive due process rights, in violation of 42 U.S.C. § 1983; gender discrimination, in violation of Title IX, 20 U.S.C. § 1681; and retaliation, in violation of Title IX and Title IV, 42 U.S.C. § 2000d. The district court dismissed Bowers's complaint for failure to state a claim, Fed.R.Civ.P. 12(b)(6). No reversible error has been shown; we affirm.

Bowers's complaint arose from events surrounding denial of his admission to the Medical College of Georgia ("MCG"). Bowers applied for -- and was denied -- admission to MCG in 2006, 2007, 2008, 2009, and 2010. After his first two applications were denied, Bowers filed a complaint with the United States Department of Education Office of Civil Rights ("OCR"), alleging gender

---

[1]Because Bowers is a licensed lawyer, his complaint does not receive the liberal construction typically afforded pro se plaintiffs' complaints. See Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977).

discrimination.[2]  Bowers later filed a second complaint with the OCR alleging that

MCG retaliated against him for filing his first OCR complaint.

After reviewing Bowers's 2009 application, Dr. Geoffrey Young (who was

aware of Bowers's OCR complaints) and two other reviewers (who were unaware

of the OCR complaints), unanimously recommended that the application be

denied.  Based on this recommendation -- and on a summary prepared by Dr.

Young that allegedly omitted favorable information about Bowers -- the full

admission committee denied Bowers's 2009 application.  Bowers requested that

the Board of Regents of the University System of Georgia conduct a review of

MCG's denial of his 2009 application based on race, gender, and age

discrimination.  The Board rejected Bowers's request.

MCG later rejected Bowers's 2010 application for admission: Bowers's

2006 Medical College Admissions Test ("MCAT") score was too old to be

considered by the admissions committee.

Bowers filed suit against MCG; the Board of Regents; Dr. Ricardo Azziz,

President of MCG, in his official capacity; Dr. Douglas Miller, the dean of MCG,

in this official capacity; Dr. Young, associate dean of admissions at MCG, in his

official capacity; and Dr. Errol Davis, chancellor of the University System of

---

[2]Bowers also alleged that he was discriminated against based on his age but has not raised an age discrimination claim in this suit.

Georgia, in his official capacity ("Defendants").[3]  The district court granted

Defendants' motion to dismiss for failure to state a claim, pursuant to Fed.R.Civ.P.

12(b)(6).

We review a district court's ruling on a Rule 12(b)(6) motion to dismiss <u>de

novo</u>, accepting all well-pleaded facts in the complaint and all reasonable

inferences drawn from those facts as true.  <u>McGinley v. Houston</u>, 361 F.3d 1328,

1330 (11th Cir. 2004).  To survive dismissal for failure to state a claim, "a

plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65

(2007) (quotations omitted).  "Factual allegations must be enough to raise a right to

relief above the speculative level."  <u>Id.</u> at 1965.  Mere conclusory statements in

support of a threadbare recital of the elements of a cause of action will not suffice.

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

---

[3]The district court concluded that MCG was not a proper party to suit and, instead, construed the claims against MCG to be claims against Drs. Azziz, Miller, and Young in their official capacities.  Because Bowers has failed to state a claim against either  MCG or Drs. Azziz, Miller, or Young, it is unnecessary for us to resolve this proper-party issue on appeal.

I.

Bowers raises several challenges to the district court's dismissal of his complaint.  Bowers first argues that the district court erred in failing to recognize a fundamental right to purchase a medical school education.  To establish a claim under section 1983, a plaintiff must show that he "was deprived of a federal right by a person acting under color of state law."  Griffin v. City of Opa-Locka, 261 F.3d 1295, 1303 (11th Cir. 2001).  Under the Fourteenth Amendment's Due Process Clause, substantive due process "protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'"  McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994).

Bowers has not shown that Defendants deprived him of a fundamental right and, thus, has failed to state a claim under section 1983.  Both the United States Supreme Court and this Court have concluded that no fundamental right to public education exists, let alone a fundamental right to a public medical school education.  See Phyler v. Doe, 102 S.Ct. 2382, 2396-97 (1982) (public elementary and secondary education is not a fundamental right protected by the Constitution); San Antonio Indep. Sch. Dist. v. Rodriguez, 93 S.Ct. 1278, 1299-1300 (1973) (same); C.B. v. Driscoll, 82 F.3d 383, 389 (11th Cir. 1996) ("The right to attend a public school is a state-created, rather than a fundamental, right for the purposes of

5

substantive due process."). We are reluctant to expand the scope of rights that may be considered "fundamental" for purposes of substantive due process, and we see no reason to do so here. See McKinney, 20 F.3d at 1556.

## II.

Bowers also argues that Defendants infringed on his substantive due process rights when they refused arbitrarily and capriciously to consider his 2010 admissions application because his MCAT scores were too old. The Supreme Court has warned that courts should avoid overriding genuinely academic decisions "unless [the decision] is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." Regents of Univ. of Mich. v. Ewing, 106 S.Ct. 507, 513-14 (1985).

Bowers has not alleged that MCG's test score policy differs from policies followed by other medical schools. And we do not understand that MCG's policy constitutes a "substantial departure from accepted academic norms." See id. Bowers's conclusory statement that MCG's policy is arbitrary and capricious, without more, fails to state a substantive due process claim. See Iqbal, 129 S.Ct. at 1949.

III.

Next, Bowers argues that he sufficiently asserted a claim for relief under Title IX.[4]  He contends that MCG's method of computing applicants' prerequisite grade point averages ("GPAs") -- which includes applicants' grades in undergraduate math courses even though MCG does not require applicants to take math courses -- discriminates intentionally against men because men statistically are more likely to take math courses.  The complaint does not, however, allege that men who take math courses usually hurt their GPAs as a result.

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).[5]  We apply Title VII case law to assess Bowers's Title IX claim.

To establish a prima facie case of disparate treatment under this framework, Bowers must show that (1) he is a member of a protected class; (2) he was subject to an adverse admissions action; (3) the school treated similarly situated applicants

---

[4]In addressing Bowers's Title IX disparate treatment claim, the district court said that claims arising from the denial of Bowers's 2006, 2007, and 2008 admissions applications were time-barred and that events occurring outside the applicable statute of limitations could not be used to support Bowers's claims.  Because the district court's statute of limitations analysis was unnecessary to that court's dismissal of Bowers's claims, we need not resolve this issue on appeal.

[5]The Supreme Court has recognized an implied private right of action to enforce Title IX. Cannon v. Univ. of Chi., 99 S.Ct. 1946, 1958-60 (1979).

7

who were not members of his protected class more favorably; and (4) he was qualified. See Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006).

"Although a Title VII complaint need not allege facts sufficient to make out a classic McDonnell Douglas[6] prima facie case, it must provide 'enough factual matter (taken as true) to suggest' intentional . . . discrimination." Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 (11th Cir. 2008) (citing Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 997 (2002), and Twombly, 127 S.Ct. at 1965). In addition to containing well-pleaded factual allegations, complaints must also meet the "plausibility standard" set forth in Twombly and Iqbal. See Iqbal, 129 S.Ct. at 1949-50. This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 1949. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quotations omitted). Our analysis of the plausibility standard is "context-specific" and "requires [us] to draw on [our] judicial experience and common sense." Id. at 1950.

Bowers's complaint alleges that the inclusion of undergraduate math GPAs discriminates intentionally against men. But Bowers's argument hinges on an

_____

[6]McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).

8

assumption -- one which Bowers does not allege expressly -- that grades in undergraduate math classes are typically lower than grades in MCG's prerequisite classes. While this assumption may be possible, it is equally possible that -- particularly for those electing to take undergraduate math courses -- grades in undergraduate math classes are equal to, or even higher than, grades in MCG's prerequisite classes. In this case, the inclusion of math GPAs would either have no effect on or may actually increase an applicant's GPA. Because both of these scenarios could be possible, Bowers's "has not nudged his claims of invidious discrimination across the line from conceivable to plausible." See id. at 1950-51. Thus, the district court concluded correctly that Bowers failed to state a claim for discrimination under Title IX.

## IV.

Bowers argues that Dr. Young retaliated against him for filing a civil rights complaint with the OCR by misrepresenting Bowers's credentials to the admissions committee. To establish a prima facie case of retaliation under Title IX,[7] Bowers must show that (1) he engaged in statutorily protected expression;

---

[7]The Supreme Court has recognized a claim for retaliation under Title IX of 20 U.S.C. § 1681. Jackson v. Birmingham Bd. of Educ., 125 S.Ct. 1497, 1502 (2005). As the district court did, we apply the framework for Title VII retaliation claims to Bowers's Title IX retaliation claim.

9

(2) Defendants took action that would have been materially adverse to a reasonable applicant; and (3) a causal link existed between the two events. See Burlington N. & Santa Fe Ry. v. White, 126 S.Ct. 2405, 2415 (2006); Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).

To demonstrate causation, "a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." Shannon v. BellSouth Telecomm., Inc., 292 F.3d 712, 716 (11th Cir. 2002). Causation may be inferred by a close temporal proximity between the protected activity and the adverse action. Thomas v. Cooper Light., Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). "But mere temporal proximity, without more, must be 'very close.'" Id.

Bowers bases his retaliation claim on the temporal proximity between the date on which Dr. Young received notice of Bowers's OCR complaint and the date on which Dr. Young misrepresented Bowers's qualifications to the admissions committee. But, according to Bowers's complaint, Dr. Young knew about Bowers's OCR complaint on or around 2 October 2008 -- more than three months before Dr. Young allegedly made misrepresentations to the admissions committee on 22 January 2009. A three-month temporal gap, without more, does not establish the needed inference of causation. See id. Bowers has failed to state a claim of retaliation stemming from his OCR complaint.

10

V.

Bowers also contends that the Board of Regents retaliated against him, in violation of Titles VI[8] and IX, for requesting review of MCG's decision to deny his 2009 admission application.  To succeed on a retaliation claim, plaintiffs must show that defendants' actions were materially adverse, meaning that the challenged actions would "dissuade[] a reasonable [person] from making or supporting a charge of discrimination."  Burlington N. & Santa Fe Ry., 126 S.Ct. at 2415.

The district court determined correctly that Bowers's allegations that he (1) was not allowed to address the Board at the Board's meetings, (2) was asked to leave before the Board's vote, (3) was not permitted to copy documents produced at the meetings, and (4) was followed by a security guard, were not sufficiently adverse to state a retaliation claim.  Such acts would not dissuade a reasonable person from pursuing a claim of discrimination.  See id.  Although Bowers alleges that these acts caused him "extreme emotional distress," his subjective view of the

---

[8]Title VI prohibits discrimination on account of race, color, or national origin in all programs and activities receiving federal financial assistance.  42 U.S.C. § 2000d.  The Supreme Court has recognized a cause of action for retaliation under Title IX, Jackson, 125 S.Ct. at 1502, and we construe Titles VI and IX in pari materia.  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1170 n.12 (11th Cir. 2003).

11

adversity of Defendants' acts is not controlling. See Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1215 (11th Cir. 2008).

We accept that the Board's affirmation of MCG's denial of Bowers's 2009 admissions application was materially adverse. But Bowers has failed to allege a causal link between his protected conduct and the Board's adverse act. Instead, a strong and reasonable inference from Bowers's complaint is that the Board upheld the denial of his 2009 application because Bowers was unqualified. Bowers's complaint alleged that each member of MCG's admissions committee who was interviewed by the OCR said that Bowers's 2008 application was rejected because his grades were too low. The complaint also alleged that MCG rejected Bowers's 2006 and 2007 applications. Even drawing all inferences in Bowers's favor, MCG's repeated denials of Bowers's applications for admission make it probable that the Board upheld MCG's rejection of Bowers's 2009 application because Bowers was unqualified, not in retaliation.

We affirm the district court's dismissal pursuant to Rule 12(b)(6). And we draw the parties' attention to the teachings of Iqbal and Twombly.

AFFIRMED.

12